UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

JOSE MANUEL ARVISO, LUCIO BARTOLO-       )
HUERTA, OSCAR BRAVO-MOYA, MARCELO        )
CHAVEZ, DANIEL CRUZ, FELIPE GALLEGOS,    )
INOCENCIO GERONIMO-MAGAÑA, ADOLFO        )
GREGORIO, SANTIAGO JARAMILLA-GOMEZ,      )
ANGEL JUAREZ-FLORES, ALFONSO LUNA-       )
MARTINEZ, JORGE NIETO-JASSO, DANIEL      )
MOLINA-GREGORIO, NORBERTO OLVERA,        )    Case No.: _99-1760·CIV-T-17E_
JAVIER OLVERA-AGUILAR, PAULINO OLVERA-   )
AGUILAR, FELIPE PAZ-GONZALEZ, GILBERTO   )    **CLASS ACTION**
PEREZ-FLORES, ANTONIO RESENDIZ, GENARO   )
RODRIGUEZ, JUVENTINO RODRIGUEZ, PEDRO    )
RODRIGUEZ, EUCARIO SEGOVIA and MARCOS    )
TREJO, individually and on behalf of all persons )
similarly situated,                      )
                                         )
        Plaintiffs,                      )
                                         )
v.                                       )
                                         )
WILLIAMSON BERRY FARMS, INC., SLEEPY     )
CREEK FARMS, INC. and MICHELLE D.        )
WILLIAMSON,                              )
                                         )
        Defendants.                      )
_____  )

**COMPLAINT**

**PRELIMINARY STATEMENT**

1.     This is a civil action for declaratory relief, injunctive relief and damages brought

by farm workers who contracted with Defendants to work their 1998-1999 winter strawberry

harvest. All of the Plaintiffs, individually, seek redress under the Fair Labor Standards Act

("FLSA"), 29 U.S.C. § 201 et.seq., for the Defendants' failure to pay at least the federally

T000243

mandated minimum wage.  All of the Plaintiffs seek damages, on behalf of themselves and the

class, for the Defendants' breach of their employment contract.  Certain of the Plaintiffs, on

behalf of themselves and all similarly situated farm workers, seek redress under the Migrant and

Seasonal Agricultural Worker Protection Act ("AWPA"), 29 U.S.C. § 1801 et. seq., for

Defendants' failure to comply with their working arrangement and to pay wages promptly when

due.  In addition to damages, all the Plaintiffs seek declaratory and injunctive relief so that they

and other workers will not be subjected by the Defendant to such illegal conduct in the future.

## JURISDICTION

2.      This action arises under the FLSA, 29 U.S.C. § 201 et. seq. and the AWPA, 29

U.S.C. § 1801 et.seq.  This Court has jurisdiction pursuant to 29 U.S.C. § 29 U.S.C. § 216(b), 29

U.S.C. § 1854(a), 28 U.S.C. § 1331 and 28 U.S.C. § 1337.

3.      Declaratory relief is authorized pursuant to 28 U.S.C. §§ 2201 and 2202.

## VENUE

4.      Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) and (c), and 29

U.S.C. § 1854(a).

## PARTIES

5.      At all times relevant, JOSE MANUEL ARVISO, MARCELO CHAVEZ,

DANIEL CRUZ, FELIPE GALLEGOS, ANGEL JUAREZ-FLORES, NORBERTO OLVERA,

JAVIER OLVERA-AGUILAR, PAULINO OLVERA-AGUILAR, FELIPE PAZ-GONZALEZ,

ANTONIO RESENDIZ, GENARO RODRIGUEZ, JUVENTINO RODRIGUEZ, PEDRO

RODRIGUEZ, EUCARIO SEGOVIA and MARCOS TREJO (hereinafter, "Domestic

Plaintiffs")  were  migrant or seasonal farm workers within the meaning of 29 U.S.C. §§

2

1802(8)(A) or (10)(A) in that each was employed in agricultural employment of a seasonal or temporary nature performing field work related to planting, cultivating or harvesting operations.

6.      LUCIO BARTOLO-HUERTA, OSCAR BRAVO-MOYA,  INOCENCIO GERONIMO-MAGAÑA, ADOLFO GREGORIO, SANTIAGO JARAMILLA-GOMEZ, ALFONSO LUNA-MARTINEZ, JORGE NIETO-JASSO, DANIEL MOLINA-GREGORIO and GILBERTO PEREZ-FLORES (hereinafter, "H-2A Plaintiffs") are citizens of Mexico who were admitted to the United States on a temporary basis pursuant to 8 U.S.C. § 1101(a)(15)(H)(ii)(a) temporarily, to plant, cultivate, cut, trim, remove plastic and drip-tape, engage in freeze protection activities or otherwise harvest strawberries; to plant and harvest squash; and to plant and harvest fresh and pickled cucumbers.

7.      Defendant WILLIAMSON BERRY FARMS, INC. ("Williamson Berry") is a Florida corporation doing business in Hillsborough County, Florida.  At all times relevant, Williamson Berry was an agricultural employer within the meaning of 29 U.S.C. § 1802(2) in that it owned or operated a farm and employed migrant or seasonal agricultural workers.

8.      Defendant SLEEPY CREEK FARMS, INC. ("Sleepy Creek") is a Florida corporation doing business in Hillsborough County, Florida.  At all times relevant, Sleepy Creek was an agricultural employer within the meaning of 29 U.S.C. § 1802(2) in that it owned or operated a farm and recruited or employed migrant and seasonal agricultural workers.

9.      Defendant MICHELLE D. WILLIAMSON ("Williamson") is an individual residing in Hillsborough County, Florida.  She is the chief executive officer and day to day manager of both Williamson Berry and Sleepy Creek.  At all times relevant, Williamson was an agricultural employer within the meaning of 29 U.S.C. § 1802(2) in that she owned or operated a

3

farm and employed migrant or seasonal agricultural workers.

10.     At all times relevant, the Defendants acted as joint employers and
shared their employees, directly or indirectly, by reason of the fact that each controlled, was
controlled by or was under the common control of the other.

## CLASS ACTION ALLEGATIONS

11.     All claims set forth in Count II are brought by all Plaintiffs on behalf of
themselves and all other similarly situated persons pursuant to Rules 23(a) and 23(b)(3) of the
Federal Rules of Civil Procedure.  The class of persons which Plaintiffs seek to represent
consists of all persons who were employed by the Defendants during the period from October 1,
1998 through approximately April 15, 1999 to plant, cultivate, cut, trim, remove plastic and drip-
tape, engage in freeze protection activities or otherwise harvest strawberries; to plant and harvest
squash; and to plant and harvest fresh and pickled cucumbers (hereinafter, "General Class").

12.     All claims set forth in Count III are brought by both the Domestic Plaintiffs on
behalf of themselves and all other similarly situated persons pursuant to Rules 23(a) and 23(b)(3)
of the Federal Rules of Civil Procedure.  The class of persons which the Domestic Plaintiffs seek
to represent in Count III consists of all migrant or seasonal farm workers within the meaning of
29 U.S.C. §§ 1802(8)(A) or (10)(A) who were employed by the Defendants during the period
from October 1, 1998 through approximately April 15, 1999 to plant, cultivate, cut, trim, remove
plastic and drip-tape, engage in freeze protection activities or otherwise harvest strawberries; to
plant and harvest squash; and to plant and harvest fresh and pickled cucumbers (hereinafter,
"Domestic Class").

13.     The members of the two Plaintiffs' classes are so numerous and so geographically

4

dispersed as to make joinder impracticable. The precise number of individuals in the classes is known only to the Defendants. However, they are each believed to include over 40 individuals. The classes are comprised principally of indigent migrant farm workers. The relatively small size of the individual claims and the indigency of the class members makes the maintenance of separate actions by each class member economically infeasible. Joinder of all class members is impracticable.

14.     There are common questions of law and fact within each of the two classes. In the General Class (Count II), these common questions include whether the Defendants breached the terms of their job offer by failing to pay the General Class members the proper wage as mandated by the contract and H-2A regulations. In the Domestic Class (Count III), these common questions include whether the Defendants violated the AWPA by failing to pay wages when due and by violating the terms of the working arrangement with the Domestic Class members.

15.     The claims of the Plaintiffs as set forth are typical of those of the class members in both classes. The Defendants' breach of the employment contract, as alleged in Count II, deprived General Class members of the legal protections guaranteed them under the H-2A regulations and state contract law. The Defendants' violation of the AWPA, as alleged in Count III, deprived Domestic Class members of the protections guaranteed them under that statute.

16.     The Plaintiffs will fairly and adequately represent the interests of the class. The Plaintiffs' interests are in no way antagonistic or adverse to those of the other class members.

17.     The Plaintiffs' counsel are prepared to advance the costs, including the costs of

notice, necessary to vigorously litigate this action.

18.    The questions of law or fact common to the class as set forth in Counts II and III predominate over any questions affecting only individual members. A class action is superior to other available methods for the fair and efficient adjudication of the controversy. With regard to the claims set forth in Counts II and III, the class members have no appreciable interest in individually controlling the prosecution of separate actions and no class members have already commenced litigation concerning this controversy. It is desirable to concentrate litigation of all of the claims encompassed in Counts II and III before this Court. This matter can be effectively managed as a class action.

## STATUTORY AND REGULATORY STRUCTURE

19.    An agricultural employer in the United States may import temporary foreign workers (H-2A workers) if the United States Department of Labor certifies that (1) there are not enough workers in the United States to perform the job, and (2) the employment of aliens will not adversely effect the wages and working conditions of workers in the United States who are similarly employed. See 8 U.S.C. §§ 1101(a)(15)(H)(ii)(a) and 1188(a)(1). These provisions, along with the implementing Immigration and Naturalization Service ("INS") and DOL regulations, are commonly referred to as "the H-2A Program."

20.    Employers requesting H-2A workers must file a temporary alien labor certification application with the DOL Regional Administrator responsible for the area where the job is located. See 20 C.F.R. §§ 655.101(a)(1) and (b)(1) (1999). The application must include a job offer that complies with the requirements of 20 C.F.R. §§ 655.102 and 653.501 (1999). See 20 C.F.R. § 655.101(b)(1) (1999). These regulations establish the minimum benefits, wages and

6

working conditions required in H-2A job offers in order to avoid adversely affecting similarly employed United States workers. See 20 C.F.R. §§ 655.0(a)(2) and 655.102 (1999).

21.     Once the minimum requirements are satisfied and the job offer is otherwise valid, United States worker availability is tested by the interstate employment service system, which actively recruits United States workers by circulating the job offers both intrastate and interstate. See 20 C.F.R. §§ 655.0(a)(2), 655.90(c), 655.101(c)(2), 655.105 (1999). This job offer, commonly referred to as a "clearance order," is used for recruitment of both United States and H-2A workers.

22.     If it is determined that sufficient United States workers are not available to fill the jobs, the DOL certifies the need for workers, and the Attorney General, through the INS, issues H-2A visas for the number of job opportunities not filled by United States workers. See 20 C.F.R. § 655.106(b)(1).

## FACTS

23.     On July 28, 1998, Defendant Michelle Williamson, through a registered agent, filed with the Secretary of State of Florida Articles of Incorporation creating Sleepy Creek Farms, Inc., a Florida corporation. Ms. Williamson was designated as the sole officer of Sleepy Creek. On information and belief, Sleepy Creek and Williamson Berry are substantively the same business operation, run by the same management. At all times relevant, Sleepy Creek, Williamson Berry and Williamson acted as joint employers of the Plaintiffs.

24.     As part of an application for temporary labor certification, in or about July, 1998, the Defendants prepared and submitted to the United States Department of Labor ("DOL") and the Florida State Employment Service an Agricultural and Food Processing Clearance Order

(Employment and Training Administration Form 790). (Ex. 1). The clearance order was submitted in the name of Sleepy Creek and was intended to serve as the job offer for purposes of the temporary labor certification application. The clearance order contained a certification by the employer that it described the actual terms and conditions of employment being offered and contained all material terms and conditions of the job.

25.     The Regional Administrator of the DOL accepted the Defendants' job offer as set out in the clearance order and directed that recruitment of domestic workers proceed under the terms of the clearance order.

26.     The clearance order explicitly incorporated the DOL regulations at 20 C.F.R. 655 Subpart B, and otherwise, including the following:

(a)     That all work was to be paid at a rate of at least the adverse effect wage rate (as determined by the United States Department of Labor) in effect at the time the work was performed;

(b)     That thirty-six hours of work per week were available during the period from October 1, 1998 to March 31, 1999;

(c)     That workers would be furnished housing without charge; and

(d)     That workers would be reimbursed the costs of transportation and subsistence for their travel to and from the place of employment.

27.     Defendants also assured, through incorporation of DOL regulations in its clearance order, that domestic workers would be offered benefits, wages and working conditions no less favorable than those offered to alien H-2A workers.

28.     Defendants subsequently prepared and submitted two additional clearance orders

8

requesting additional workers. The first, submitted in the name of Sleepy Creek, offered work

from December 15, 1998 through March 31, 1999. (Ex. 2). The second, submitted in the name

of Williamson Berry, offered work from December 28, 1998 through March 31, 1999. (Ex. 3).

Both of these clearance orders incorporated the same DOL regulations and made the same

assurances contained in the initial Sleepy Creek clearance order and detailed in paragraphs 26

and 27.

29.     Defendants, pursuant to their clearance orders, subsequently hired a

number of alien H-2A workers from Mexico, including H-2A Plaintiffs. Defendants jointly

employed these workers.

30.     Defendants also hired a number of domestic workers, including the Domestic

Plaintiffs. These Plaintiffs performed tasks described in the clearance orders. Defendants jointly

employed these workers.

31.     Defendants subsequently provided terms and conditions of employment to the

Plaintiffs that were materially different from those described in the clearance orders. Among

other things:

> (a)     The Plaintiffs were not paid the adverse effect wage rate ("AEWR") in effect for
>
>         each hour or portion thereof worked during a pay period;

> (b)     The Domestic Plaintiffs were not offered free housing as guaranteed under the
>
>         clearance order; and

> (c)     The Plaintiffs were not reimbursed for transportation and subsistence costs for
>
>         transportation to and from the place of employment, as guaranteed under the
>
>         contract.

## COUNT I (FLSA)

### (Domestic and H-2A Plaintiffs) (Individual Claim)

32.     The Plaintiffs reallege and incorporate by reference the allegations set forth in paragraphs 1 through 31 of this Complaint.

33.     This count sets forth a claim for declaratory relief and damages by the Plaintiffs for failure to pay the federally mandated minimum wage, as required by the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201, et. seq.

34.     At all times relevant, the Plaintiffs were employed by the Defendants within the meaning of the FLSA.

35.     The Defendants failed to pay the Plaintiffs at least $5.15 for each compensable hour of work.

36.     The violations of the FLSA resulted, in part, from Defendants' unlawful withholding from the Domestic Plaintiffs' wages of money for housing furnished; and from the Defendants' failure to reimburse H-2A Plaintiffs in the first week of their employment for necessary passport, photograph, recruitment, visa, border-crossing, transportation and subsistence costs which were incurred primarily for the benefit of the Defendants.

## COUNT II (Breach of Contract)

### (Domestic and H-2A Plaintiffs) (Class Claim)

37.     The Plaintiffs reallege and incorporate by reference all allegations set forth in paragraphs 1 through 36 of this Complaint.

38.     This Count sets forth a claim by the Plaintiffs and the other members of the General Class for the Defendants' breach of its employment contracts with the class members.

10

39.     The clearance order constituted a binding contractual offer that was accepted by the Plaintiffs and class members by their traveling to Defendants' job site and performing the labor described in the clearance order.

40.     Defendants breached their contract with the Plaintiffs and class members by, among other things, failing to pay the AEWR for each hour of work or portion thereof offered and failing to reimburse transportation and subsistence costs.

41.     As a direct consequence of the Defendants' breach of the Plaintiffs' and class members' employment contract, the Plaintiffs and class members have suffered damages.

## COUNT III (AWPA)

### (Domestic Plaintiffs) (Class Claim)

42.     The Plaintiffs reallege and incorporate by reference all allegations set forth in paragraphs 1 through 41 of this Complaint.

43.     This count sets forth a claim by the Domestic Plaintiffs and the other members of the Domestic Class pursuant to 29 U.S.C. §§ 1822(c) and 1832(c) for the Defendants' violation of the terms of their working arrangement.

44.     By failing to pay the AEWR and the transportation reimbursement, Defendants intentionally failed to pay wages when due in violation of 29 U.S.C. §§ 1822(a) and 1832(a).

45.     By failing to provide terms and conditions of employment consistent with the clearance order, Defendants intentionally violated the terms of the working arrangement with Plaintiffs in violation of 29 U.S.C. §§ 1822(c) and 1832(c).

46.     As a result of each violation of the AWPA, the Plaintiffs have suffered damages.

### PRAYER FOR RELIEF

11

WHEREFORE, Plaintiffs pray that this Court enter an Order:

(a)    Certifying this action as a class action in accordance with Rule 23(b)(3) of the

        Federal Rules of Civil Procedure;

(b)    Declaring that Defendants violated the FLSA;

(c)    Declaring that Defendants intentionally violated the AWPA;

(d)    Awarding each Plaintiff actual and liquidated damages for each violation of the

        FLSA set out in Count I;

(e)    Awarding each Plaintiff and General Class member actual, consequential and

        incidental damages for breach of their employment contract, as set out in Count II;

(f)    Awarding each of the Domestic Plaintiffs and Domestic Class members their

        actual damages, or statutory damages in the amount of Five Hundred Dollars

        ($500.00), whichever is higher, for every violation of the AWPA set out in Count

        III;

(g)    Awarding the Plaintiffs their costs of litigation;

(h)    Awarding the Plaintiffs reasonable attorney's fees as provided in the FLSA and in

        Section 448.08, Florida Statutes;

(i)    Awarding the Plaintiffs and class members all interest due from the date of the

        infraction;

(j)    Enjoining the Defendants from further violations of the AWPA; and

(k)    Granting such other and further relief as this Court deems just and appropriate.

12

Dated: July 29, 1999

Respectfully submitted,

Patrick J. Walsh
Pro Hac Vice
Kentucky Bar Number 86619
Migrant Farmworker Justice Project
P.O. Box 2110
Belle Glade, FL 33430
(561) 996-5266
(561) 992-5040 (fax)

Gregory S. Schell
Florida Bar Number 287199
Migrant Farmworker Justice Project
P.O. Box 2110
Belle Glade, FL 33430
(561) 996-5266
(561) 992-5040 (fax)

# EXHIBIT 1

earance Order
Employment and Training Administration

3218

**AD CAREFULLY:** In view of the statutorily established basic function of the employment vice as a no-fee labor exchange, that is, as a forum for bringing together employers and seekers, neither the ETA nor the State agencies are guarantors of the accuracy or truth-less of information contained on job orders submitted by employers. Nor does any job er accepted or recruited upon by the JS constitute a contractual job offer to which the A or a State agency is in any way a party.

OMB Approval No. 1205-0134

| | |
|---|---|
| 1. Industry Code  017 | 2. Job Order Number |

3. Occupational Title and Code
   Farmworker, Diversified Crops II
   407.687.010

| Employer's Name and Address (Number, Street, City, State, Zip Code, and Telephone Number) | 5. Anticipated Period of Employment |
|---|---|

RIDA FRUIT & VEGETABLE ASSOCIATION, as agent for
eepy Creek Farms, Inc.
?6 Sydney Dover Road
ver, FL  33527

5. Anticipated Period of Employment
From: 10/1/98    To: 3/31/99

6. Clearance Order Issue Date | Job Order Expiration Date

| Preferred Crew Leader/Worker's Name and Address | Social Security Number | Leader's Functions | Yes | No | 8. No. & Type of Workers Requested |
|---|---|---|---|---|---|
| | N/A | Supervises | ☐ | ☒ | Total Number  25 |
| N/A | Telephone Number | Transports | ☐ | ☒ | No. Individual  25 |
| | N/A | Pays | ☐ | ☒ | No. Family  0 |
| | | Assumes OASI | ☐ | ☒ | |

Wage Rates, Special Pay Information and Deductions

| Crop Activity | Flat Rate (i.e., hr. wk.) | Piece Rate | Unit | Est. Hourly Rate Equiv. | C/L Wage Rate |
|---|---|---|---|---|---|
| rawberry PH/H | See Attachment | | | 6.77 | N/A |
| ash PH/H | See Attachment | | | 6.77 | N/A |
| umber PH/H | See Attachment | | | 6.77 | N/A |

(See attachment no. .............)

10. Anticipated Hrs. of Work
Per Week    36

| | | |
|---|---|---|
| Normal Hours Per Day | Sun .... | Thu .... |
| | Mon ..6.. | Fri 5 |
| | Tues .... | Sat .... |
| | Wed ..6.. | |

Job Specifications (If additional space is needed, please use separate sheet of paper or reverse of form)

kers will perform assigned duties as instructed by their supervisor.  Duties may vary from time to time and may :lude all of the following job specifications:

awberry Planting:  While carrying bag/box of strawberry plants, worker will walk down row and place one or two nts as instructed into each hole in the plastic and firm dirt around plant.

ner Cutting/Trimming:  Worker will walk down row as instructed and cut/trim runners, leaves and blooms as directed m each strawberry plant as necessary.

11
(See attachment no. .........)

| Location and Direction to Work Site | 13. Board Arrangements |
|---|---|
| m is located in Hillsborough County. | Workers will feed themselves. |
| (See attach. no. ......) | (See attach. no. ......) |

| Location and Description of Housing | Number and Capacity of Housing Units | | | | | |
|---|---|---|---|---|---|---|
| sing is located at 2620 Sydney Dover Road, Dover, Florida. | | Barracks | | Family Units | | Single Rooms |
| | No. | Total Cap. | No. | Total Cap. | No. | Total Cap. |
| ployer assures the availability of no cost or public using which meets the full set of applicable standards. (See attach. no. ......) 14 | | | | | 20 | 50 |
| | Authorized Capacity ........50........ | | | | | |

| Referral Instructions | 16. Collect Calls Accepted | Yes | No |
|---|---|---|---|
| referrals are to be made to the employer. | By Employer | ☐ | ☒ |
| (See attach. no. ......) 15 | By Order Holding Office | ☐ | ☐ |

| Transportation Arrangements | 18. Distribution of Clearance Order |
|---|---|
| Attachment 17 | |
| (See attach. no. ......) | |

| Address of Order Holding Office (include Telephone Number) | 20. Employer's Certification: This job order describes the actual terms and conditions of the employment being offered by me and contains all the material terms and conditions of the job. |
|---|---|
| nt City Jobs and Benefits N. Alexander St. te 1 nt City, FL  33566    (813) 757-9009 | Signature |

ne of Agency Representative

8.  **No. & Type of Workers Requested**
    The employer anticipates employing a total of 30 workers of which 25 will be from out of the area of employment and 5 recruited from the local area. A local job order will be filed with the local Job Service Office for the 5 local workers.

9.  **Wage Rates, Special Pay Information, and Deductions**
    a.  Activity

| Activity | Pay Rate |
| --- | --- |
| Strawberry Planting | $8.00 per thousand planted plants |
| Runner and Plant Cutting/Trimming | $6.77 per hour |
| Weeding | $6.77 per hour |
| Plastic and Drip-tape Removal | $60.00 per acre of removed material |
| Strawberry Harvesting | $1.70 per 12 individual one pint flat weighing approx. 12 lbs. |
| | $.85 per 6 individual one pint flat weighing approx. 6 lbs. |
| | $1.60 per 8 individual clam shells weighing approx. 10 lbs. |
| | $1.60 per 4 individual clam shells weighing approx. 10 lbs. |
| | $1.30 per 12, 8 oz. clam shells weighing approx. 8 lbs. |
| | $1.70 per consumer stem clam shell weighing approx. 4 lbs. |
| | $1.25 per container weighing approx. 4 lbs. |
| Squash Planting | $6.77 per hour |
| Squash Harvest | $6.77 per hour |
| Cucumber Planting | $6.77 per hour |
| Fresh Cucumber Harvest | $.40 per ½ bushel |
| Pickle Cucumber Harvest | $1.00 per ½ bushel |

b.  The 1998 adverse effect wage rate of $6.77 per hour or a higher prevailing wage rate, if applicable, is guaranteed as a minimum for all hours worked during a pay period. If the worker's total pay for the pay period from piece-rate earnings and hourly wages divided by his total hours worked during that pay period results in average hourly earnings of less than the guaranteed hourly rate, the worker will be provided build-up pay to the guaranteed minimum hourly rate.

c.  The employer will make the following deductions: FICA taxes, income tax, cash advances, overpayment of wages, any loss to the employer due to the worker's damage or loss of equipment or housing items where it is shown that the worker is responsible, any other deductions expressly authorized by the worker in writing.

d.  Employer will _____ will not ___X___ pay the worker a bonus of $_N/A_ per _N/A__, bases on Quality Picking ___N/A___ End of Season __N/A__ Other ____N/A__ Anticipated date by which payments will be made: ___N/A__

Attachment page 1 of 5

e.  ¾ work guarantee:  The employer will guarantee to offer the worker employment for at least three-fourths of the workdays of the total periods during which the work contract and all extensions thereof are in effect, beginning with the first workday after the arrival of the worker at the place of employment and ending on the expiration date specified in the work contract or in its extensions, if any.  If the employer affords the worker during the total work contract period less employment than that required under this work guarantee, the employer shall pay such worker the amount which the worker would have earned had the worker, in fact, worked for the guaranteed number of days.  For purposes of this guarantee, a workday shall mean the number of hours in a workday as stated in this job order and shall exclude the worker's Sabbath and federal holidays.  A worker may be offered more than the specified hours of work on a single workday, including the worker's Sabbath and federal holiday.  For purposes of meeting the guarantee, however, the worker shall not be required to work for more than the number of hours specified in this job order for a workday, or on the worker's Sabbath or federal holiday.  In determining whether the guarantee of employment has been met, any hours which the worker fails to work during a work day when the worker is afforded the opportunity to do so by the employer and hours of work performed, shall be counted in calculating the employment guarantee.  The employment guarantee may be abated by the employer before the expiration date specified in the work contract for reasons beyond the employer's control due to an Act of God and the employer may terminate the work contract.  The work guarantee will also be void from the beginning should the worker abandon or quit this employment before the end of the contract period or in the event the worker is terminated for lawful job related reason. The employer will not be liable for payment of the work guarantee with respect to an H-2A worker whom the Regional Administrator certifies is displaced because of the employer's compliance with the 50 percent rule.

f.  Payroll periods will be weekly.

g.  The employer will provide worker referred through the interstate clearance system 36 hours of work for the week beginning with the anticipated date of need, unless the employer has amended the date of need by notifying the local Job Service office no later than 10 days before the date of need.  If the employer fails to notify the order-holding office, then the employer shall pay an eligible worker referred through the clearance system $6.77 for the first week starting with the originally anticipated date of need.  The employer will __X__ will not _____ require worker to perform alternative work if the guarantee cited in this section is invoked.  The alternative work and pay are:  General farm work, farm maintenance and other general labor activities at $6.77 per hour.  If worker referred fails to notify the order-holding office of continued interest in the job at least 5 days before date of need, worker will be disqualified from the above-mentioned assurance.

10. Anticipated Hours of Work
Six (6) hours per day, Monday through Saturday, is normal, however, the worker may be requested but not required to work additional hours per day and the Sabbath and/or federal holidays and Saturday depending upon the conditions of the crop, weather, maturity of the crop and market conditions.

11. Job Specifications

Weeding: Workers will remove weeds by use of a hoe from the walk-way and remove all weeds growing around plants by hand.

Plastic and Drip-tape Removal: Unhook drip-tape from main water line, walk down row while pulling plastic down the bed until it is completely removed. Take removed plastic to burning station located at the end of row.

Strawberry Harvest:   Strawberries are extremely fragile and must be picked and handled with care to eliminate any bruising or other damage to the fruit. As instructed by supervisor, worker will move down assigned row and while picking ripe fruit will be required to remove and discard damaged fruit from plant taking extreme care not be damage plant. Worker will pick ripe fruit of proper color, size and quality as instructed by Supervisor and place fruit in container taking care not to bruise or crush fruit. When containers are full will take flat/box to berry house located at end of the field and set flat/box on shelf. Obtain empty flat/box and return to assigned row. May be required to pick long stem fruit. Workers will be required to place harvested berries in specified containers according to very high quality standards established by buyer.

Squash Planting: As instructed by supervisor, move down row placing two (2) seeds in each hole firmly packing dirt.

Squash Harvest: As instructed by supervisor, move down row and pick proper size, quality and color squash and place in container. Take full container to packing area in field and may also assist in packing and grading squash in the field.

Cucumber Planting: As instructed by supervisor, move down row placing two (2) seeds in each hole firmly packing dirt.

Fresh Cucumber Harvest: As instructed by supervisor, move down row and pick proper size, quality and color of cucumber and place in container and take full container to loading area in field.

Pickle Cucumber Harvest: As instructed by supervisor, move down row and pick proper size, quality and color of cucumber and place in container and take full container to loading area in field.

The employer will provide picking containers and other tools necessary to perform the described job duties without charge to the worker. The employer will charge the worker for reasonable costs related to the worker's refusal or negligent failure to return the tools or due to such worker's willful damage or destruction of the tools.

14. Location and Description of Housing

The employer will provide to those workers who are not reasonably able to return to their residence within the same day housing, without charge to the worker, which meets applicable state and federal housing standards. However, the employer will require workers to reimburse

the employer for damage caused to housing by the individual workers found to have been responsible for damage which is not the result of normal wear and tear related to habitation. Workers will be responsible for maintaining housing in a neat, clean manner.

15. Referral instructions

All referrals are to be made to Michelle Williams or Maurice Turgeau at (813-659-0400 or mobile phone 813-763-0650). Because of prior problems with invalid social security numbers, all applicants should be advised that the employer is a participant in the Social Security Administration's Enumeration Verification System (EVS). Under this program, after being hired, all workers' social security numbers will be verified by the Social Security Administration. The employer is employing this program for the sole purpose of insuring that the records of the workers are correct for the purpose of completing Form W-2 (Wage and Tax Statement).

Prior to referral, each worker should either read or have read to them a copy of the Job Offer and that they understand all terms and conditions of employment as noted in the order. All workers should also be advised that they will be expected to work for the total period of employment as noted in the Job Offer and should be available to work in any one of the listed job activities at the discretion of the employer.

17. Transportation Arrangements

For workers hired from beyond normal commuting distance, after completion of 50 percent of the work contract period, the employer shall reimburse the worker for costs incurred by the worker for transportation and daily subsistence, as required by DOL regulations, from the place from which the worker has come to work for the employer to the place of employment. If the worker completes the work contract period, the employer will provide or pay for the worker's transportation and daily subsistence from the place of employment to the place from which the worker, disregarding intervening employment, came to work for the employer, or, if the worker has contracted with a subsequent employer who has not agreed in that contract to provide or pay for the worker's transportation and daily subsistence expenses from the employer's worksite to such subsequent employer's worksite, the employer will provide or pay for such expenses; except that, if the worker has contracted for employment with a subsequent employer who, in that contract, has agreed to pay for the worker's transportation and daily subsistence expenses from the employer's worksite to such subsequent employer's worksite, the employer is not required to provide or pay for such expenses.

For workers residing in the employer's housing, the employer will provide transportation between the worker's living quarters, and the employer's worksite and return without cost to the worker.

Other Conditions of Employment:

a.  Termination: Employer may terminate the worker with notification to the Job Service local office if the worker: (a) refuses without justified cause to perform work for which the worker was recruited and hired or refuses to follow housing rules; (b) commits serious

acts of misconduct; (c) malingers or otherwise refuses to work in accordance with directions or is otherwise obviously unqualified to perform the job.  Three unexcused absences by the worker will be considered a job-related reason for worker termination.

b.  In the event of termination for medical reasons occurring after arrival on the job as a result of employment, or in the event of termination resulting from an Act of God, the employer will provide or pay reasonable costs of return transportation and subsistence to the place of recruitment and reimburse worker for reasonable costs of transportation and subsistence incurred by the worker to get to the place of employment.

c.  Injuries:  Worker will be covered by Workers' Compensation Insurance or equivalent employer provided insurance for injuries arising out of and in the course of employment. Employer's proof of insurance coverage will be provided to the Regional Administrator before certification is granted.

d.  Employer Obligation if Employment Extended:  No extension of employment beyond the period of employment specified in the job order shall relieve the employer from paying the wages already earned, or, if specified in the job order as a term of employment, providing return transportation or paying return transportation expenses to the worker.

e.  Employer Notification of Changes in Employment Terms and Conditions:  Employer will expeditiously notify the order-holding local office or State agency by telephone immediately upon learning that a crop is maturing earlier or later, or that weather conditions, over-recruitment, or other factors have changed the terms and conditions of employment.

f.  Outreach Workers:  Outreach workers shall have reasonable access to the worker in the conduct of outreach activities pursuant to 20 CFR 653.107 and 20 CFR 653.501 (xvi).

g.  Work Agreement:  A copy of the Job Clearance Order will be provided to the worker by the employer no later than on the day the worker commences work.

h.  Wage Statements:  Employer will furnish to the worker on or before each pay day written statements showing the hours actually worked by the worker and the worker's total earnings for the pay period.  Such statements will comply with DOL requirements.

i.  Other:  Employer agrees to abide by the regulations at 20 CFR 655.103, Assurances, and 20 CFR 653.501.

# EXHIBIT 2

Agricultural and Food Processing
Clearance Order

U.S. Department of Labor
Employment and Training Administration

331.5

**READ CAREFULLY:** In view of the statutorily established basic function of the employment service as a no-fee labor exchange, that is, as a forum for bringing together employers and job seekers, neither the ETA nor the State agencies are guarantors of the accuracy or truthfulness of information contained on job orders submitted by employers. Nor does any job order accepted or recruited upon by the JS constitute a contractual job offer to which the ETA or a State agency is in any way a party.

OMB Approval No. 1205-0134

| 1. Industry Code | 2. Job Order Number |
|---|---|
| 017 | |

3. Occupational Title and Code
Farmworker, Diversified Crops II
407.687.010

| 4. Employer's Name and Address (Number, Street, City, State, Zip Code, and Telephone Number) | 5. Anticipated Period of Employment | |
|---|---|---|
| FLORIDA FRUIT & VEGETABLE ASSOCIATION, as agent for Sleepy Creek Farms, Inc. 2626 Sydney Dover Road Dover, FL 33527 | From: 12/15/98 | To: 3/31/99 |
| | 6. Clearance Order Issue Date | Job Order Expiration Date |

| 7. Preferred Crew Leader/Worker's Name and Address | Social Security Number | Leader's Functions | Yes | No | 8. No. & Type of Workers Requested |
|---|---|---|---|---|---|
| | N/A | Supervises | ☐ | ☒ | Total Number 25 |
| | Telephone Number | Transports | ☐ | ☒ | No. Individual 25 |
| N/A | | Pays | ☐ | ☒ | No. Family |
| | N/A | Assumes OASI | ☐ | ☒ | |

9. Wage Rates, Special Pay Information and Deductions

| Crop Activity | Flat Rate (i.e., hr. wk.) | Piece Rate | Unit | Est. Hourly Rate Equiv. | C/L Wage Rate |
|---|---|---|---|---|---|
| Strawberry PH/H | See Attachment | | | 6.77 | N/A |
| Squash PH/H | See Attachment | | | 6.77 | N/A |
| Cucumber PH/H | See Attachment | | | 6.77 | N/A |

(See attachment no. 9 )

10. Anticipated Hrs. of Work

Per Week ..... 36

| | Sun 0 | Thu 6 |
|---|---|---|
| Normal Hours Per Day | Mon 6 | Fri 6 |
| | Tues 6 | Sat |
| | Wed 6 | |

11. Job Specifications (If additional space is needed, please use separate sheet of paper or reverse of form)

Workers will perform assigned duties as instructed by their supervisor. Duties may vary from time to time and may include all of the following job specifications:

Runner Cutting/Trimming: Worker will walk down row as instructed and cut/trim runners, leaves and blooms as directed from each strawberry plant as necessary.

Freeze Protection Activities: May assist, regardless of time of day, in keeping overhead irrigation rain birds free of ice during freezing weather

11

(See attachment no. )

| 12. Location and Direction to Work Site | 13. Board Arrangements |
|---|---|
| Farm is located in Hillsborough County. | |
| (See attach. no. ) | (See attach. no. 13 ) |

14. Location and Description of Housing

Housing is located at 2620 Sydney Dover Road, Dover, Florida.

Employer assures the availability of no cost or public housing which meets the full set of applicable standards. (See attach. no. 14 )

Number and Capacity of Housing Units

| | Barracks | | Family Units | | Single Rooms | |
|---|---|---|---|---|---|---|
| | No. | Total Cap. | No. | Total Cap. | No. | Total Cap. |
| | | | | | 20 | 50 |

Authorized Capacity 50

| 15. Referral Instructions | 16. Collect Calls Accepted | Yes | No |
|---|---|---|---|
| All referrals are to be made to the employer. (See attach. no. 15 ) | By Employer | ☐ | ☒ |
| | By Order Holding Office | ☐ | ☐ |

| 17. Transportation Arrangements | 18. Distribution of Clearance Order |
|---|---|
| See Attachment 17 (See attach. no. ) | |

| 19. Address of Order Holding Office (include Telephone Number) | 20. Employer's Certification: This job order describes the actual terms and conditions of the employment being offered by me and contains all the material terms and conditions of the job. |
|---|---|
| Plant City Jobs and Benefits 414 N. Alexander St. Suite 1 Plant City, FL 33566 (813) 757-9009 | Signature |

| Name of Agency Representative (Include Telephone Number) | Title EMPLOYER'S AGENT - FFVA Authorized Representative |
|---|---|

8. <u>No. & Type of Workers Requested</u>

The employer anticipates employing a total of 30 workers of which <u>25</u> will be from out of the area of employment and <u>5</u> recruited from the local area. A local job order will be filed with the local Job Service Office for the <u>5</u> local workers.

9. <u>Wage Rates, Special Pay Information, and Deductions</u>

    a. <u>Activity</u>

| Activity | Pay Rate |
|---|---|
| Runner and Plant Cutting/Trimming | $6.77 per hour |
| Weeding | $6.77 per hour |
| Plastic and Drip-tape Removal | $60.00 per acre of removed material |
| Strawberry Harvesting | $1.70 per 12 individual one pint flat weighing approx. 12 lbs. |
| | $.85 per 6 individual one pint flat weighing approx. 6 lbs. |
| | $1.60 per 8 individual clam shells weighing approx. 10 lbs. |
| | $1.60 per 4 individual clam shells weighing approx. 10 lbs. |
| | $1.30 per 12, 8 oz. clam shells weighing approx. 8 lbs. |
| | $1.70 per consumer stem clam shell weighing approx. 4 lbs. |
| | $1.25 per container weighing approx. 4 lbs. |
| Squash Planting | $6.77 per hour |
| Squash Harvest | $6.77 per hour |
| Cucumber Planting | $6.77 per hour |
| Fresh Cucumber Harvest | $.40 per ½ bushel |
| Pickle Cucumber Harvest | $1.00 per ½ bushel |
| Freeze Protection Activities | $6.77 per hour |

    b. The 1998 adverse effect wage rate of $6.77 per hour or a higher prevailing wage rate, if applicable, is guaranteed as a minimum for all hours worked during a pay period. If the worker's total pay for the pay period from piece-rate earnings and hourly wages divided by his total hours worked during that pay period results in average hourly earnings of less than the guaranteed hourly rate, the worker will be provided build-up pay to the guaranteed minimum hourly rate.

    c. The employer will make the following deductions: FICA taxes, income tax, cash advances, overpayment of wages, any loss to the employer due to the worker's damage or loss of equipment or housing items where it is shown that the worker is responsible, any other deductions expressly authorized by the worker in writing.

    d. Employer will _____ will not ___X___ pay the worker a bonus of $_N/A_ per _N/A_, bases on Quality Picking ___N/A___ End of Season __N/A__ Other _____N/A__ Anticipated date by which payments will be made: ___N/A__

e. ¾ work guarantee: The employer will guarantee to offer the worker employment for at least three-fourths of the workdays of the total periods during which the work contract and all extensions thereof are in effect, beginning with the first workday after the arrival of the worker at the place of employment and ending on the expiration date specified in the work contract or in its extensions, if any. If the employer affords the worker during the total work contract period less employment than that required under this work guarantee, the employer shall pay such worker the amount which the worker would have earned had the worker, in fact, worked for the guaranteed number of days. For purposes of this guarantee, a workday shall mean the number of hours in a workday as stated in this job order and shall exclude the worker's Sabbath and federal holidays. A worker may be offered more than the specified hours of work on a single workday, including the worker's Sabbath and federal holiday. For purposes of meeting the guarantee, however, the worker shall not be required to work for more than the number of hours specified in this job order for a workday, or on the worker's Sabbath or federal holiday. In determining whether the guarantee of employment has been met, any hours which the worker fails to work during a work day when the worker is afforded the opportunity to do so by the employer and hours of work performed, shall be counted in calculating the employment guarantee. The employment guarantee may be abated by the employer before the expiration date specified in the work contract for reasons beyond the employer's control due to an Act of God and the employer may terminate the work contract. The work guarantee will also be void from the beginning should the worker abandon or quit this employment before the end of the contract period or in the event the worker is terminated for lawful job related reason. The employer will not be liable for payment of the work guarantee with respect to an H-2A worker whom the Regional Administrator certifies is displaced because of the employer's compliance with the 50 percent rule.

f. Payroll periods will be weekly.

g. The employer will provide worker referred through the interstate clearance system 36 hours of work for the week beginning with the anticipated date of need, unless the employer has amended the date of need by notifying the local Job Service office no later than 10 days before the date of need. If the employer fails to notify the order-holding office, then the employer shall pay an eligible worker referred through the clearance system $6.77 for the first week starting with the originally anticipated date of need. The employer will __ X __ will not _____ require worker to perform alternative work if the guarantee cited in this section is invoked. The alternative work and pay are: General farm work, farm maintenance and other general labor activities at $6.77 per hour. If worker referred fails to notify the order-holding office of continued interest in the job at least 5 days before date of need, worker will be disqualified from the above-mentioned assurance.

10. Anticipated Hours of Work
Six (6) hours per day, Monday through Saturday, is normal, however, the worker may be requested but not required to work additional hours per day and the Sabbath and/or federal holidays and Saturday depending upon the conditions of the crop, weather, maturity of the crop and market conditions.

11. Job Specifications

Weeding:  Workers will remove weeds by use of a hoe from the walk-way and remove all weeds growing around plants by hand.

Plastic and Drip-tape Removal:  Unhook drip-tape from main water line, walk down row while pulling plastic down the bed until it is completely removed.  Take removed plastic to burning station located at the end of row.

Strawberry Harvest:   Strawberries are extremely fragile and must be picked and handled with care to eliminate any bruising or other damage to the fruit.  As instructed by supervisor, worker will move down assigned row and while picking ripe fruit will be required to remove and discard damaged fruit from plant taking extreme care not be damage plant.  Worker will pick ripe fruit of proper color, size and quality as instructed by Supervisor and place fruit in container taking care not to bruise or crush fruit.  When containers are full will take flat/box to berry house located at end of the field and set flat/box on shelf.  Obtain empty flat/box and return to assigned row.  May be required to pick long stem fruit.  Workers will be required to place harvested berries in specified containers according to very high quality standards established by buyer.

Squash Planting:  As instructed by supervisor, move down row placing two (2) seeds in each hole firmly packing dirt.

Squash Harvest:  As instructed by supervisor, move down row and pick proper size, quality and color squash and place in container.  Take full container to packing area in field and may also assist in packing and grading squash in the field.

Cucumber Planting:  As instructed by supervisor, move down row placing two (2) seeds in each hole firmly packing dirt.

Fresh Cucumber Harvest:  As instructed by supervisor, move down row and pick proper size, quality and color of cucumber and place in container and take full container to loading area in field.

Pickle Cucumber Harvest: As instructed by supervisor, move down row and pick proper size, quality and color of cucumber and place in container and take full container to loading area in field.

The employer will provide picking containers and other tools necessary to perform the described job duties without charge to the worker.  The employer will charge the worker for reasonable costs related to the worker's refusal or negligent failure to return the tools or due to such worker's willful damage or destruction of the tools.

13. Board Arrangements

Employer will provide free and convenient cooking and kitchen facilities to workers which will enable workers to prepare their own meals.

14. Location and Description of Housing

The employer will provide to those workers who are not reasonably able to return to their residence within the same day housing, without charge to the worker, which meets applicable state and federal housing standards. However, the employer will require workers to reimburse the employer for damage caused to housing by the individual workers found to have been responsible for damage which is not the result of normal wear and tear related to habitation. Workers will be responsible for maintaining housing in a neat, clean manner.

15. Referral instructions

All referrals are to be made to Michelle Williams or Maurice Turgeau at (813-659-0400 or mobile phone 813-763-0650). Because of prior problems with invalid social security numbers, all applicants should be advised that the employer is a participant in the Social Security Administration's Enumeration Verification System (EVS). Under this program, after being hired, all workers' social security numbers will be verified by the Social Security Administration. The employer is employing this program for the sole purpose of insuring that the records of the workers are correct for the purpose of completing Form W-2 (Wage and Tax Statement).

Prior to referral, each worker should either read or have read to them a copy of the Job Offer and that they understand all terms and conditions of employment as noted in the order. All workers should also be advised that they will be expected to work for the total period of employment as noted in the Job Offer and should be available to work in any one of the listed job activities at the discretion of the employer.

17. Transportation Arrangements

For workers hired from beyond normal commuting distance, after completion of 50 percent of the work contract period, the employer shall reimburse the worker for costs incurred by the worker for transportation and daily subsistence, as required by DOL regulations, from the place from which the worker has come to work for the employer to the place of employment. If the worker completes the work contract period, the employer will provide or pay for the worker's transportation and daily subsistence from the place of employment to the place from which the worker, disregarding intervening employment, came to work for the employer, or, if the worker has contracted with a subsequent employer who has not agreed in that contract to provide or pay for the worker's transportation and daily subsistence expenses from the employer's worksite to such subsequent employer's worksite, the employer will provide or pay for such expenses; except that, if the worker has contracted for employment with a subsequent employer who, in that contract, has agreed to pay for the worker's transportation and daily subsistence expenses from the employer's worksite to such subsequent employer's worksite, the employer is not required to provide or pay for such expenses.

For workers residing in the employer's housing, the employer will provide transportation between the worker's living quarters, and the employer's worksite and return without cost to the worker.

Other Conditions of Employment:

a. Termination: Employer may terminate the worker with notification to the Job Service local office if the worker: (a) refuses without justified cause to perform work for which the worker was recruited and hired or refuses to follow housing rules; (b) commits serious acts of misconduct; (c) malingers or otherwise refuses to work in accordance with directions or is otherwise obviously unqualified to perform the job. Three unexcused absences by the worker will be considered a job-related reason for worker termination.

b. In the event of termination for medical reasons occurring after arrival on the job as a result of employment, or in the event of termination resulting from an Act of God, the employer will provide or pay reasonable costs of return transportation and subsistence to the place of recruitment and reimburse worker for reasonable costs of transportation and subsistence incurred by the worker to get to the place of employment.

c. Injuries: Worker will be covered by Workers' Compensation Insurance or equivalent employer provided insurance for injuries arising out of and in the course of employment. Employer's proof of insurance coverage will be provided to the Regional Administrator before certification is granted.

d. Employer Obligation if Employment Extended: No extension of employment beyond the period of employment specified in the job order shall relieve the employer from paying the wages already earned, or, if specified in the job order as a term of employment, providing return transportation or paying return transportation expenses to the worker.

e. Employer Notification of Changes in Employment Terms and Conditions: Employer will expeditiously notify the order-holding local office or State agency by telephone immediately upon learning that a crop is maturing earlier or later, or that weather conditions, over-recruitment, or other factors have changed the terms and conditions of employment.

f. Outreach Workers: Outreach workers shall have reasonable access to the worker in the conduct of outreach activities pursuant to 20 CFR 653.107 and 20 CFR 653.501 (xvi).

g. Work Agreement: A copy of the Job Clearance Order will be provided to the worker by the employer no later than on the day the worker commences work.

h. Wage Statements: Employer will furnish to the worker on or before each pay day written statements showing the hours actually worked by the worker and the worker's total earnings for the pay period. Such statements will comply with DOL requirements.

i. Other: Employer agrees to abide by the regulations at 20 CFR 655.103, Assurances, and 20 CFR 653.501.

# EXHIBIT 3

**Agricultural and Food Processing** <br>
**Clearance Order**

**U.S. Department of Labor** <br>
Employment and Training Administration



| READ CAREFULLY: In view of the statutorily established basic function of the employment service as a no-fee labor exchange, that is, as a forum for bringing together employers and job seekers, neither the ETA nor the State agencies are guarantors of the accuracy or truthfulness of information contained on job orders submitted by employers. Nor does any job order accepted or recruited upon by the JS constitute a contractual job offer to which the ETA or a State agency is in any way a party. | OMB Approval No. 1205-0134 |
|---|---|

| OMB Approval No. 1205-0134 | |
|---|---|
| 1. Industry Code<br>017 | 2. Job Order Number |
| 3. Occupational Title and Code<br>Farmworker, Diversified Crops II<br>407.687.010 | |

| 4. Employer's Name and Address (Number, Street, City, State, Zip Code, and Telephone Number)<br><br>FLORIDA FRUIT & VEGETABLE ASSOCIATION, as agent for<br>Williamson Berry Farm, Inc.<br>12885 Highway 92 East<br>Dover, FL 33527 | 5. Anticipated Period of Employment |
|---|---|

| 5. Anticipated Period of Employment | | |
|---|---|---|
| From: 12/28/98 | To: | 3/31/99 |
| 6. Clearance Order Issue Date | Job Order Expiration Date | |

| 7. Preferred Crew Leader/Worker's Name and Address | Social Security Number<br>N/A | Leader's Functions | Yes | No | 8. No. & Type of Workers Requested |
|---|---|---|---|---|---|
| | | Supervises | ☐ | ☒ | Total Number ......... 25 |
| | Telephone Number<br>N/A | Transports | ☐ | ☒ | No. Individual ......... 25 |
| N/A | | Pays | ☐ | ☒ | No. Family ......... 0 |
| | | Assumes OASI | ☐ | ☒ | |

| 9. Wage Rates, Special Pay Information and Deductions | | | | | | 10. Anticipated Hrs. of Work | |
|---|---|---|---|---|---|---|---|
| Crop Activity | Flat Rate<br>(i.e., hr. wk.) | Piece Rate | Unit | Est. Hourly<br>Rate Equiv. | C/L Wage Rate | Per Week ......36.... | |
| Strawberry PR/H | See Attachment | | | 6.77 | N/A | Normal<br>Hours<br>Per<br>Day | Sun ....0.... Thu ..6.. |
| Squash PR/H | See Attachment | | | 6.77 | N/A | | Mon ....6.. Fri ..8.. |
| Cucumber PR/H | See Attachment | | | 6.77 | N/A | | Tues ..6.. Sat ..... |
| (See attachment no. ......9......) | | | | | | | Wed ..6.. |

**11. Job Specifications (If additional space is needed, please use separate sheet of paper or reverse of form)**

Workers will perform assigned duties as instructed by their supervisor. Duties may vary from time to time and may include all of the following job specifications:

Runner Cutting/Trimming: Worker will walk down row as instructed and cut/trim runners, leaves and blooms as directed from each strawberry plant as necessary.

Freeze Protection Activities: May assist, regardless of time of day, in keeping overhead irrigation rain birds free of ice during freezing weather.

(See attachment no. ........11.........)

| 12. Location and Direction to Work Site<br><br>Farm is located in Hillsborough County.<br><br>(See attach. no. ......) | 13. Board Arrangements<br><br><br>(See attach. no. .13..) |
|---|---|

| 14. Location and Description of Housing<br><br>Housing is located at 2620 Sydney Dover Road, Dover, Florida. | Number and Capacity of Housing Units |
|---|---|

| 14. Location and Description of Housing | | Barracks | | Family Units | | Single Rooms | |
|---|---|---|---|---|---|---|---|
| Housing is located at 2620 Sydney Dover Road, Dover, Florida.<br><br>Employer assures the availability of no cost or public housing which meets the full set of applicable standards. (See attach. no. ..14..) | | No. | Total Cap. | No. | Total Cap. | No.<br>20 | Total Cap.<br>50 |
| | | Authorized Capacity...................50 | | | | | |

| 15. Referral Instructions<br><br>All referrals are to be made to the employer.<br><br>(See attach. no. ...15...) | 16. Collect Calls Accepted | Yes | No |
|---|---|---|---|
| | By Employer | ☐ | ☒ |
| | By Order Holding Office | ☐ | ☐ |

| 17. Transportation Arrangements<br><br>See Attachment 17<br><br>(See attach. no. ......) | 18. Distribution of Clearance Order |
|---|---|

| 19. Address of Order Holding Office (include Telephone Number)<br><br>Plant City Jobs and Benefits<br>414 N. Alexander St.<br>. Suite 1<br>Plant City, FL 33566    (813) 757-9009 | 20. Employer's Certification: This job order describes the actual terms and conditions of the employment being offered by me and contains all the material terms and conditions of the job.<br><br>Signature |
|---|---|
| Name of Agency Representative (Include Telephone Number) | Title<br>EMPLOYER'S AGENT - FFVA<br>Authorized Representative |

8. <u>No. & Type of Workers Requested</u>
The employer anticipates employing a total of 35 workers of which <u>25</u> will be from out of the area of employment and <u>10</u> recruited from the local area.  A local job order will be filed with the local Job Service Office for the <u>10</u> local workers.

9. <u>Wage Rates, Special Pay Information, and Deductions</u>

a. <u>Activity</u>                                         <u>Pay Rate</u>

| Activity | Pay Rate |
|---|---|
| Runner and Plant Cutting/Trimming | $6.77 per hour |
| Weeding | $6.77 per hour |
| Plastic and Drip-tape Removal | $60.00 per acre of removed material |
| Strawberry Harvesting | $1.70 per 12 individual one pint flat weighing approx. 12 lbs. |
| | $.85 per 6 individual one pint flat weighing approx. 6 lbs. |
| | $1.60 per 8 individual clam shells weighing approx. 10 lbs. |
| | $1.60 per 4 individual clam shells weighing approx. 10 lbs. |
| | $1.30 per 12, 8 oz. clam shells weighing approx. 8 lbs. |
| | $1.70 per consumer stem clam shell weighing approx. 4 lbs. |
| | $1.25 per container weighing approx. 4 lbs. |
| Squash Planting | $6.77 per hour |
| Squash Harvest | $6.77 per hour |
| Cucumber Planting | $6.77 per hour |
| Fresh Cucumber Harvest | $.40 per ½ bushel |
| Pickle Cucumber Harvest | $1.00 per ½ bushel |
| Freeze Protection Activities | $6.77 per hour |

b. The 1998 adverse effect wage rate of $6.77 per hour or a higher prevailing wage rate, if applicable, is guaranteed as a minimum for all hours worked during a pay period.  If the worker's total pay for the pay period from piece-rate earnings and hourly wages divided by his total hours worked during that pay period results in average hourly earnings of less than the guaranteed hourly rate, the worker will be provided build-up pay to the guaranteed minimum hourly rate.

c. The employer will make the following deductions:  FICA taxes, income tax, cash advances, overpayment of wages, any loss to the employer due to the worker's damage or loss of equipment or housing items where it is shown that the worker is responsible, any other deductions expressly authorized by the worker in writing.

d. Employer will _____ will not ___X___ pay the worker a bonus of $_N/A_ per N/A_, bases on Quality Picking ___N/A___ End of Season __N/A_ Other ____N/A__
Anticipated date by which payments will be made:  __N/A_

e. ¾ work guarantee: The employer will guarantee to offer the worker employment for at least three-fourths of the workdays of the total periods during which the work contract and all extensions thereof are in effect, beginning with the first workday after the arrival of the worker at the place of employment and ending on the expiration date specified in the work contract or in its extensions, if any.  If the employer affords the worker during the total work contract period less employment than that required under this work guarantee, the employer shall pay such worker the amount which the worker would have earned had the worker, in fact, worked for the guaranteed number of days.  For purposes of this guarantee, a workday shall mean the number of hours in a workday as stated in this job order and shall exclude the worker's Sabbath and federal holidays.  A worker may be offered more than the specified hours of work on a single workday, including the worker's Sabbath and federal holiday.  For purposes of meeting the guarantee, however, the worker shall not be required to work for more than the number of hours specified in this job order for a workday, or on the worker's Sabbath or federal holiday.  In determining whether the guarantee of employment has been met, any hours which the worker fails to work during a work day when the worker is afforded the opportunity to do so by the employer and hours of work performed, shall be counted in calculating the employment guarantee.  The employment guarantee may be abated by the employer before the expiration date specified in the work contract for reasons beyond the employer's control due to an Act of God and the employer may terminate the work contract.  The work guarantee will also be void from the beginning should the worker abandon or quit this employment before the end of the contract period or in the event the worker is terminated for lawful job related reason.  The employer will not be liable for payment of the work guarantee with respect to an H-2A worker whom the Regional Administrator certifies is displaced because of the employer's compliance with the 50 percent rule.

f. Payroll periods will be weekly.

g. The employer will provide worker referred through the interstate clearance system 36 hours of work for the week beginning with the anticipated date of need, unless the employer has amended the date of need by notifying the local Job Service office no later than 10 days before the date of need.  If the employer fails to notify the order-holding office, then the employer shall pay an eligible worker referred through the clearance system $6.77 for the first week starting with the originally anticipated date of need.  The employer will __X__ will not _____ require worker to perform alternative work if the guarantee cited in this section is invoked.  The alternative work and pay are:  General farm work, farm maintenance and other general labor activities at $6.77 per hour.  If worker referred fails to notify the order-holding office of continued interest in the job at least 5 days before date of need, worker will be disqualified from the above-mentioned assurance.

10. Anticipated Hours of Work
Six (6) hours per day, Monday through Saturday, is normal, however, the worker may be requested but not required to work additional hours per day and the Sabbath and/or federal holidays and Saturday depending upon the conditions of the crop, weather, maturity of the crop and market conditions.

11. Job Specifications
Weeding:  Workers will remove weeds by use of a hoe from the walk-way and remove all weeds growing around plants by hand.

Plastic and Drip-tape Removal:  Unhook drip-tape from main water line, walk down row while pulling plastic down the bed until it is completely removed.  Take removed plastic to burning station located at the end of row.

Strawberry Harvest:    Strawberries are extremely fragile and must be picked and handled with care to eliminate any bruising or other damage to the fruit.  As instructed by supervisor, worker will move down assigned row and while picking ripe fruit will be required to remove and discard damaged fruit from plant taking extreme care not be damage plant.  Worker will pick ripe fruit of proper color, size and quality as instructed by Supervisor and place fruit in container taking care not to bruise or crush fruit.  When containers are full will take flat/box to berry house located at end of the field and set flat/box on shelf.  Obtain empty flat/box and return to assigned row.  May be required to pick long stem fruit.  Workers will be required to place harvested berries in specified containers according to very high quality standards established by buyer.

Squash Planting:  As instructed by supervisor, move down row placing two (2) seeds in each hole firmly packing dirt.

Squash Harvest:  As instructed by supervisor, move down row and pick proper size, quality and color squash and place in container.  Take full container to packing area in field and may also assist in packing and grading squash in the field.

Cucumber Planting: As instructed by supervisor, move down row placing two (2) seeds in each hole firmly packing dirt.

Fresh Cucumber Harvest:  As instructed by supervisor, move down row and pick proper size, quality and color of cucumber and place in container and take full container to loading area in field.

Pickle Cucumber Harvest: As instructed by supervisor, move down row and pick proper size, quality and color of cucumber and place in container and take full container to loading area in field.

The employer will provide picking containers and other tools necessary to perform the described job duties without charge to the worker.  The employer will charge the worker for reasonable costs related to the worker's refusal or negligent failure to return the tools or due to such worker's willful damage or destruction of the tools.

13. Board Arrangements
Employer will provide free and convenient cooking and kitchen facilities to workers which will enable workers to prepare their own meals.

14. <u>Location and Description of Housing</u>
The employer will provide to those workers who are not reasonably able to return to their residence within the same day housing, without charge to the worker, which meets applicable state and federal housing standards. However, the employer will require workers to reimburse the employer for damage caused to housing by the individual workers found to have been responsible for damage which is not the result of normal wear and tear related to habitation. Workers will be responsible for maintaining housing in a neat, clean manner.

15. <u>Referral instructions</u>
All referrals are to be made to Michelle Williams or David Barber at (813-659-0400 or 813-294-5784). Because of prior problems with invalid social security numbers, all applicants should be advised that the employer is a participant in the Social Security Administration's Enumeration Verification System (EVS). Under this program, after being hired, all workers' social security numbers will be verified by the Social Security Administration. The employer is employing this program for the sole purpose of insuring that the records of the workers are correct for the purpose of completing Form W-2 (Wage and Tax Statement).

Prior to referral, each worker should either read or have read to them a copy of the Job Offer and that they understand all terms and conditions of employment as noted in the order. All workers should also be advised that they will be expected to work for the total period of employment as noted in the Job Offer and should be available to work in any one of the listed job activities at the discretion of the employer.

17. <u>Transportation Arrangements</u>

For workers hired from beyond normal commuting distance, after completion of 50 percent of the work contract period, the employer shall reimburse the worker for costs incurred by the worker for transportation and daily subsistence, as required by DOL regulations, from the place from which the worker has come to work for the employer to the place of employment. If the worker completes the work contract period, the employer will provide or pay for the worker's transportation and daily subsistence from the place of employment to the place from which the worker, disregarding intervening employment, came to work for the employer, or, if the worker has contracted with a subsequent employer who has not agreed in that contract to provide or pay for the worker's transportation and daily subsistence expenses from the employer's worksite to such subsequent employer's worksite, the employer will provide or pay for such expenses; except that, if the worker has contracted for employment with a subsequent employer who, in that contract, has agreed to pay for the worker's transportation and daily subsistence expenses from the employer's worksite to such subsequent employer's worksite, the employer is not required to provide or pay for such expenses.

For workers residing in the employer's housing, the employer will provide transportation between the worker's living quarters, and the employer's worksite and return without cost to the worker.

Other Conditions of Employment:

a. Termination:  Employer may terminate the worker with notification to the Job Service local office if the worker: (a) refuses without justified cause to perform work for which the worker was recruited and hired or refuses to follow housing rules; (b) commits serious acts of misconduct; (c) malingers or otherwise refuses to work in accordance with directions or is otherwise obviously unqualified to perform the job.  Three unexcused absences by the worker will be considered a job-related reason for worker termination.

b. In the event of termination for medical reasons occurring after arrival on the job as a result of employment, or in the event of termination resulting from an Act of God, the employer will provide or pay reasonable costs of return transportation and subsistence to the place of recruitment and reimburse worker for reasonable costs of transportation and subsistence incurred by the worker to get to the place of employment.

c. Injuries:  Worker will be covered by Workers' Compensation Insurance or equivalent employer provided insurance for injuries arising out of and in the course of employment.  Employer's proof of insurance coverage will be provided to the Regional Administrator before certification is granted.

d. Employer Obligation if Employment Extended:  No extension of employment beyond the period of employment specified in the job order shall relieve the employer from paying the wages already earned, or, if specified in the job order as a term of employment, providing return transportation or paying return transportation expenses to the worker.

e. Employer Notification of Changes in Employment Terms and Conditions:  Employer will expeditiously notify the order-holding local office or State agency by telephone immediately upon learning that a crop is maturing earlier or later, or that weather conditions, over-recruitment, or other factors have changed the terms and conditions of employment.

f. Outreach Workers:  Outreach workers shall have reasonable access to the worker in the conduct of outreach activities pursuant to 20 CFR 653.107 and 20 CFR 653.501 (xvi).

g. Work Agreement:  A copy of the Job Clearance Order will be provided to the worker by the employer no later than on the day the worker commences work.

h. Wage Statements:  Employer will furnish to the worker on or before each pay day written statements showing the hours actually worked by the worker and the worker's total earnings for the pay period.  Such statements will comply with DOL requirements.

i. Other:  Employer agrees to abide by the regulations at 20 CFR 655.103, Assurances, and 20 CFR 653.501.